(No. 15591.—Decree affirmed.)

MINNIE R. LASIER, Appellant, *vs.* MILTON M. MAYER *et al.* Appellees.

*Opinion filed February 17, 1925.*

1. EQUITY—*general rule as to when equity will reform written instrument because of mistake.* Equity will not reform written instruments on the ground of mistake unless the proof is clear and convincing that there was a mistake, that the mistake was mutual and that it was a mistake of fact and not of law, as it is presumed that the writing expresses the mutual intention.

2. CONTRACTS—*when, only, will equity rescind written contract because of mistake.* A court of equity will rescind a written contract becaues of a mistake only where the mistake is material to the transaction and affects its substance, and such mistake must not result because the care and diligence exercised by persons of reasonable prudence under like circumstances was not exercised by the maker.

3. DEEDS—*when contract, and deed pursuant thereto, cannot be reformed or rescinded.* Where the owner of three adjoining lots sells a portion thereof with the intention of retaining a certain number of feet off the rear of the lots as determined by a line drawn at right angles to a street running parallel with the lots, but the line, according to the description in the contract and deed, curves to correspond with a curve in the street on which the lots face, the vendor will not be allowed to have the contract and deed reformed to correspond with her alleged intention, where, after having a survey made, she agreed to have the line curved to correspond with the description in the contract.

APPEAL from the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding.

JOHN R. NICHOLSON, for appellant.

PHILLIPS, MACK & O'BRYAN, for appellees.

Mr. CHIEF JUSTICE DUNCAN delivered the opinion of the court:

On February 14, 1923, Minnie R. Lasier filed her bill of complaint in the superior court of Cook county against Milton M. Mayer and wife, Ruth L. Mayer, praying reformation of a written contract for the sale of real estate and of a warranty deed and trust deed executed pursuant to the contract of sale. The Mayers answered the bill, and upon a hearing before the court a decree was entered dismissing the bill for the want of equity. Minnie R. Lasier prosecutes this appeal.

In November, 1922, appellant was the owner of lots 11, 12 and 13 and the southerly ten feet of lot 14 in Winnetka Park Bluffs, in Cook county, Illinois. These lots are located on the east side of Lincoln avenue and north side of Humboldt avenue and at the intersection of these two avenues, and have a frontage of 207.5 feet on Lincoln avenue and of 152.1 feet on Humboldt avenue. Humboldt avenue curves northward along the south edge of these lots, so that the width of the lots, north and south, on the east side is 179.7 feet. The lots were improved with a two-story stucco building located on the southerly part of the lots and occupied by appellant as her residence. Ten feet north of the house and 20 feet south of the property which appellant intended to retain was a nine-foot driveway running from Lincoln avenue, and at right angles thereto, to a garage located on the eastern edge of the lots. Appellant employed McGuire & Orr, real estate agents, to sell the south part of the lots on which the building was located, with a frontage of 130 feet on Lincoln avenue. She also instructed them that she desired to retain the northerly 77.5 feet of the premises. On December 2, 1922, appellee Milton M. Mayer,

at the instance of the real estate agents, called at appellant's home and inquired of her concerning the property. Appellant told him that she desired to sell all that part of the premises south of a line 20 feet north of the driveway and "150 feet straight back." He asked appellant if he might bring his wife to look at the property, and stated that he would bring her the following day, which was Sunday. Appellees examined the property and were informed by appellant that her lowest price for the premises was $35,000. Mayer then offered her $30,000 for the property provided she would include an ice-box, stove and some other furnishings that were in the house. Appellant asked time to consult with her son, and later on the same day accepted Mayer's offer. The parties met again that evening at appellant's home and signed an option agreement, on which appellees paid appellant $25 earnest money, the property being described as the home of appellant. The next morning appellees and one Rosenthal, a real estate agent who represented them, and one Bell, of the firm of McGuire & Orr, who represented appellant, met at her home to make a written contract. Before the contract was entered into Mayer offered to purchase all of appellant's property, but appellant refused to sell all of it, stating that she wanted to build a house on the north part of the premises. There was some discussion about where the line was to run between the property to be purchased by appellees and that to be retained by appellant, and Mayer stated he would like to have it provided that appellant should not build closer than within ten feet of the line. Bell then called attention to the zoning ordinance of the village of Winnetka, which prohibited building within six feet of the property line, and to the fact that the property line would be about 20 feet north of the driveway, so that appellant would have to build at least 36 feet from the house already erected. Mayer said that that satisfied him. The parties further discussed where the north line of the property was that appel-

lant desired to sell. She stated that the north line of the property she was selling was 20 feet north of the driveway. Mayer and Bell then measured the frontage on Lincoln avenue by counting the sidewalk squares, and thus located the northerly line of the premises proposed to be sold at the point where that line would come on Lincoln avenue. They did not measure the extent of the premises north and south on the east side. Mayer called attention to the fact that the property curved a little on Humboldt avenue, and Bell replied that he did not think that it curved very much and inquired of appellant what she thought about it, and appellant replied that she did not think that it curved very much. There was nothing further said about the curve of Humboldt avenue.

The real estate agents representing appellant and appellees prepared the contract on a written form. They had a correct legal description of appellant's property before them but did not have a plat or survey thereof. The contract describes the premises sold as the southerly 130 feet of lots 11, 12 and 13, in block 10, in Winnetka Park Bluffs, being a tract 130 feet by 150 feet, more or less, with improvements thereon. Before appellant signed the contract she told Bell that she did not know anything about legal descriptions and was depending upon him for the preparation of the contract, and Bell replied that he knew what she wanted to sell and would keep her straight. He told her the contract was all right and for her to sign it. Appellant testified that when she signed the contract she intended to convey that part of the lots lying south of the north 77.5 feet, and that she intended to retain a rectangular tract on the north part of the premises 77.5 feet wide and 150 feet long. The contract provided that appellant was to furnish a survey of the property sold, and a few days after the execution of the contract she employed a firm of surveyors to prepare the survey. An employee of the firm called on her for instructions in regard to the survey, and she told him that she

had sold 130 feet on Lincoln avenue north of its intersection with Humboldt avenue "and running straight back," and was retaining 77.5 feet on the north. The survey was made accordingly and a few days later was delivered to Rosenthal, appellees' agent. The following, omitting the curved dotted line, is a copy of the plat of the survey:

On January 8, 1923, appellees, Rosenthal, appellant, her son, and McGuire, her agent, met at the office of the Chicago Title and Trust Company to close the deal. Mrs. Mayer started to sign the notes and trust deed which were to be given appellant as a part of the purchase price, and at the same time appellant signed the warranty deed, in which the property conveyed is described the same as in the contract, and delivered it to Rosenthal, who in turn delivered it to Mrs. Mayer, together with the plat of the survey, which had been in his possession since it had been delivered to him by appellant. Mrs. Mayer examined the

survey, stopped signing the notes, and said, "Why, I didn't know that my property cut off so much on the street side; I had no idea that you cut off 28 feet." Rosenthal said that the survey was wrong and drew a line on the plat of the survey with his pencil, which is represented by the dotted line in the above copy of the plat, beginning at a point 130 feet north of the intersection of Lincoln and Humboldt avenues, on Lincoln avenue, and running eastwardly across the property parallel to Humboldt avenue, and said that that was the way the line should run. He handed the plat to McGuire, who also said that the plat was wrong and should be corrected. Thereupon the appellant, after looking at the plat of the survey which had been corrected by Rosenthal's curved line, said that if a mistake had been made she would have it corrected by having a new survey. Mrs. Mayer then finished signing the notes and trust deed, which were then delivered to appellant, and the warranty deed was accepted and retained by Mrs. Mayer. The testimony shows that none of the parties connected with the sale to appellees knew that the property was narrower on the east side than on the west side, and had no intimation of that fact until they saw the plat of the survey. It also shows that Humboldt avenue presents the appearance of a curved street, curving both away from and toward the house on the property when viewed at the location of the property.

The contention of the appellant cannot be sustained that the contract between the parties, the warranty deed and the trust deed should be reformed so that the description of the property sold to appellees will be that part of lots 11, 12 and 13 which lies south of a line beginning on Lincoln avenue at a point 130 feet north of its intersection with Humboldt avenue and running thence easterly at an angle of ninety degrees from the east line of Lincoln avenue, across the lots. Equity will not reform written instruments on the ground of mistake of the parties unless (1) the proof is clear and convincing that there was a mistake; (2) that

the mistake was mutual or common to both parties; and (3) that the mistake was one of fact and not one of law. (*Kelly* v. *Galbraith,* 186 Ill. 593; *Skelly* v. *Ersch,* 305 id. 126.) When contracting parties have reduced their agreement to writing it is presumed that the writing expresses their mutual intention. This presumption does not yield to any claim of a different intention unless the evidence of a mutual mistake is of a strong and convincing character. (*Christ* v. *Rake,* 287 Ill. 619.) The proof in this case fails utterly to establish that the contract expresses a mistake on the part of appellant, or of Mrs. Mayer, to whom the deed was made. It does establish the fact that appellant at the beginning of the negotiations did not intend to convey any property south of the dotted line and north of the line established by the surveyor, as indicated on the foregoing plat, and that she intended that the property retained by her should be in the form of a parallelogram and to have a depth of 77.5 feet. It also appears very clearly that her interest was not properly looked after by her agents in the deal and that they led her into the mistake that she made. Nevertheless, she is not entitled under such a showing to a reformation of the written instruments, as it is very clear that Mrs. Mayer was contracting for the property described in the deed and in the contract, and that she did not intend to buy a piece of land whose northerly and southerly line on the east was only 102 feet. She even refused to proceed further with the execution of the contract until it was made clear to her that the property should be 130 feet in depth on the easterly line as well as on the westerly line.

After the answer to the bill had been filed by appellees, and before trial, appellant filed and presented to the court a petition to amend her bill of complaint, the amendment being, in substance, that the bill should recite that appellant offered to return to appellees all money paid by them and to place them *in statu quo* in case rescission of the contract and cancellation of the deeds should be decreed, and

asked that the prayer of relief be in the alternative, and to
the effect that the contract be rescinded and the deeds can-
celed in the event that reformation be not decreed.   The
chancellor at first granted leave to file the amendment but
afterwards vacated the order and refused to consider the
bill as amended.   The proposed amendment set up no facts
or circumstances not alleged in the original bill, and we do
not think that the allegations were sufficient for the allow-
ance of a rescission of the contract even if it had been
permitted.   The jurisdiction of equity to grant the remedy
of rescission of a written contract because of a mistake by
one of the parties is well recognized, but such relief will
be granted only where the mistake made is material to the
transaction and affects its substance, and such mistake must
not result from a want of care and diligence exercised by
persons of reasonable prudence under like circumstances.
(*Steinmeyer* v. *Schroeppel,* 226 Ill. 9.)   In this case ap-
pellant and her agents had before them a plat of the sur-
vey of the entire property owned by appellant that had
any connection with this deal.   That survey showed clearly
that the property that she originally intended to convey to
appellees was 130 feet deep on the westerly line and only
102.2 feet on the easterly line.   She could see clearly that
if she corrected the descriptions of the property so as to
deed all south of the dotted line drawn thereon that her own
property retained would not remain in the form of a rec-
tangle but would only be about 50 feet on the easterly end
and 77.5 feet on the westerly end.   Appellant testified that
she "was perfectly surprised" upon seeing the survey and
discovering that the property was 28 feet narrower on the
east side than on the west side, referring to the property
she was selling.   Notwithstanding that, she and her agents
both agreed, in substance, that the survey should be cor-
rected by making the northerly line thereof correspond with
the dotted line.   In view of all the evidence in the record it
cannot be said that appellant exercised such due care and

315—24

prudence that a person of reasonable diligence would have exercised under the circumstances, and for the want of such allegations and proof we must hold that she is not, under her bill or under the evidence, entitled to a rescission and cancellation of the contract.

The decree of the superior court is affirmed.

*Decree affirmed.*